UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA KIRBY, as personal
representative of the estate of
TOMMY KIRBY, deceased,

                 No. 20-13088

        Plaintiff,
v.                        Honorable Nancy G. Edmunds

CITY OF FLINT, OFFICER
TERRY VANKEUREN, JR., and
OFFICER DANIEL MILLER,

        Defendants.
_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [42]**

Plaintiff Jessica Kirby, as personal representative of the estate of Tommy Kirby,

brings this civil rights lawsuit under 42 U.S.C. § 1983 against Defendants City of Flint

('the City") and Flint Police Officers Terry VanKeuren, Jr. and Daniel Miller ("Defendant

Officers") in relation to the shooting death of Mr. Kirby. Before the Court is Defendants'

motion for summary judgment. (ECF No. 42.) Plaintiff opposes the motion. (ECF No.

44.) Defendants have not filed a reply. Pursuant to Eastern District of Michigan Local

Rule 7.1(f)(2), the motion will be decided on the briefs and without oral argument. For

the reasons below, the Court DENIES IN PART and GRANTS IN PART Defendants'

motion.

**I.**      **Background**

On February 24, 2019, during the early morning, Defendant Officer VanKeuren

was working a shift with Officer Randy Matteson. (ECF No. 42-4, PageID.303.) The

1

officers drove by a residence in the City of Flint where there had been a recent homicide. (*Id.* at PageID.304.) They saw Mr. Kirby running from the back of the residence out to a truck parked on the street. (*Id.*) The officers described this as "suspicious." (*Id.*; ECF No. 42-5, PageID.382.) Once Mr. Kirby entered the vehicle, the officers observed that there was no license place attached to the truck, which is a civil infraction under Michigan law. (ECF No. 42-5, PageID.383.) They then attempted to conduct a traffic stop. (*Id.* at PageID.384.) Mr. Kirby did not stop and instead drove away. Defendant Officer VanKeuren and Officer Matteson pursued him and radioed in the pursuit, requesting assistance. (*Id.* at PageID.385.) Defendant Officer Miller joined the chase. (ECF No. 42-6, PageID.427.) It was raining and the roads were slippery.

The parties differ over what happened next.

According to Defendant Officers, Mr. Kirby lost control of his vehicle on the ramp to I-69 westbound, spinning 180 degrees so that he was facing east towards oncoming traffic. (ECF No.42-5, PageID.385-86.) Officer VanKeuren then struck the vehicle in an attempt to disable it. (*Id.* at PageID.387.) Officer Miller pulled up north of Mr. Kirby's vehicle. According to the officers, even though Mr. Kirby's truck was "sandwiched" between their cruisers, Mr. Kirby pressed the accelerator and the tires were spinning. (ECF No. 42, PageID.275; ECF No. 42-4, PageID.343.) Defendant Officers positioned themselves in front of Mr. Kirby's pickup truck. Both officers were pointing their guns at Mr. Kirby and screaming for him to turn off his vehicle and get out. (ECF No. 42-6, PageID.432-35.) Officer Matteson had gotten out of the passenger side of his cruiser and was trying to get in the passenger side of Mr. Kirby's pickup truck. (ECF No. 42-4, PageID.314.) The pickup truck then lurched forwards. (ECF No. 42-6, PageID.434.)

Defendant Officers fired simultaneously, shooting Mr. Kirby through the windshield and killing him. (ECF No. 42-5, PageID.400.)

According to Plaintiff's expert, a police practice expert, Defendant Officers stopped Mr. Kirby's truck by executing a PIT (pursuit immobilization technique), causing the vehicle to spin 180 degrees and stop, facing the direction of the pursuing officers' vehicles. (ECF No. 44-4, PageID.621.) The expert further opined that based on the position of the vehicles as depicted in the photos, Mr. Kirby's truck could not have moved the ten feet indicated by the officers' testimony. (*Id.*) And that even if the vehicle was moving forward, based on that testimony and the trajectory evidence of the shot placement, Defendant Officers were not directly in the path of his truck. (*Id.*) Plaintiff's expert also opined that initiation of the pursuit of Mr. Kirby's truck did not comport with the Flint Police Department's own policy. (*Id.* at PageID.622.)

Plaintiff brings an excessive force claim against Defendant Officers and a municipal liability claim against Defendant the City of Flint.[1]

## I.    Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] Plaintiff also asserts that the municipal liability claim is brought against Defendant Officers in their official capacities, but official capacity claims are functionally the same as a claim against the entity of which the officer is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Because the City of Flint is named in connection with the municipal liability claim, the official capacity claim against Defendant Officers is dismissed as redundant.

Also, Plaintiff originally brought state law claims of gross negligence and/or willful and wanton misconduct against all the defendants, but the Court declined to exercise supplemental jurisdiction over those claims. (ECF No. 3.)

judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

## II.   Excessive Force Claim Against Defendant Officers

Defendant Officers assert a qualified immunity defense. Plaintiff argues that genuine questions of material fact preclude summary judgment.

### A.   Qualified Immunity Standard

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (internal quotation marks and citation omitted). Qualified immunity is a threshold question the Court is required to rule on "early in the proceedings so that the costs and

expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). When a government official raises a defense of qualified immunity, the plaintiff bears the burden of proving that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

The Court undertakes a two-step analysis when determining whether a government official is entitled to qualified immunity. The first inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). A court may exercise its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### B.    Analysis

A claim stemming from an officer's alleged use of excessive force during an arrest or other seizure of a free citizen is governed by the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Applying this standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations and citations omitted). In making this

determination, courts consider "the totality of the circumstances," including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* This inquiry is undertaken from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. In other words, courts must keep in mind "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. But ultimately the reasonableness inquiry is an objective one: "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

The severity of the offense at issue here weighs heavily in favor of Plaintiff. Defendant Officers were admittedly pursuing Mr. Kirby only after he refused to stop for a routine traffic stop, which was initiated because Officers VanKeuren and Matteson thought he was suspicious and wanted to investigate a civil infraction. And even though Mr. Kirby was attempting to evade arrest, there are genuine issues of fact as to whether he posed an immediate threat to the safety of the officers or others. "Deadly force is justified against 'a driver who objectively appears ready to drive into an officer or bystander with his car,' but generally not 'once the car moves away, leaving the officer and bystanders in a position of safety,' unless 'the officer's prior interactions with the driver suggest that the driver will continue to endanger others with his car.'" *Latits v. Phillips*, 878 F.3d 541, 548 (6th Cir. 2017) (quoting *Cass v. City of Dayton*, 770 F.3d

368, 375 (6th Cir. 2014)); *see also Raimey v. City of Niles*, No. 22-3285, 2023 U.S. App. LEXIS 20849, at \*12 (6th Cir. Aug. 10, 2023) (describing the question of whether a suspect posed an immediate danger as dispositive to the issue of the reasonableness of the use of deadly force) (citation omitted).

Here, Plaintiff contends that the pictures of the vehicles indicate that Mr. Kirby's truck was boxed in with nowhere to go. (*See* ECF No. 44, PageID.523-24.) And while Defendant Officers testified that Mr. Kirby's truck lurched towards them while they were directly in the path of the vehicle, Plaintiff has submitted an affidavit from a police practice expert opining that Mr. Kirby's vehicle could not have moved the ten feet indicated by that testimony and that even if the vehicle was moving towards Defendant Officers, they were not directly in the path of the truck. (ECF No. 44-4, PageID.621.) Thus, the facts taken in the light most favorable to Plaintiff support an inference that Mr. Kirby's vehicle had already been rendered immobile or that he was simply attempting to drive away and did not pose an immediate threat to the safety of the officers. *See Latits*, 878 F.3d at 550 (finding the use of deadly force objectively unreasonable where the suspect's conduct, viewed in the light most favorable to the plaintiff, showed "a persistent intent to flee but not an intent to injure, and never placed the public or the officers at imminent risk"); *cf. Plumhoff v. Rickard*, 572 U.S. 765, 776-77 (2014) (finding the use of deadly force objectively reasonable where the record conclusively disproved the contention that a chase that exceeded 100 miles per hour was already over and showed that even after the car came to a halt, the suspect resumed maneuvering the car by pushing down on the accelerator and then throwing the car into reverse). And because there is no evidence that Mr. Kirby was driving recklessly, had a weapon, or

had struck any vehicle or individual, his prior interactions with Defendant Officers do not establish that he would have continued to endanger others. *Cf. id.* at 776 (noting that the suspect's "outrageously reckless driving posed a grave public safety risk"); *Cass*, 770 F.3d at 376-77 (finding the use of deadly force objectively reasonable where the suspect had already struck two officers with his vehicle and the defendant officer heard a fellow officer discharge his weapon in what he believed was self-defense). In sum, a reasonable jury could conclude that Defendant Officers' use of deadly force was objectively unreasonable and violated Mr. Kirby's Fourth Amendment rights.

Next, the Court finds that the constitutional rights at issue were clearly established at the time of the shooting. The Sixth Circuit has stated that "a suspect fleeing in a car that has never posed a danger to anyone has the clearly established right not to be seized with deadly force." *Smith v. Cupp*, 430 F.3d 766, 777 (6th Cir. 2005). And even though that case involved the fatal shooting of a driver as he attempted to initiate flight, the Sixth Circuit has since, in a 2017 case that existed at the time of the underlying incident, found a fatal shooting following a chase on an effectively empty highway where there were no members of the public nearby objectively unreasonable, putting a reasonable officer on notice of any Fourth Amendment violation here. *See Latits*, 878 F.3d at 549-53. The Court therefore denies Defendant Officers' request for qualified immunity.

### III.   *Monell* Claim Against Defendant the City of Flint

Defendant the City of Flint argues that dismissal of Plaintiff's *Monell* claim is warranted. Plaintiff disagrees.

8

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, a plaintiff must show "'that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.'" *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)). The Court previously granted in part a motion to dismiss filed by the City, dismissing the *Monell* claim to the extent it is based on an unconstitutional policy or custom but allowing that claim to proceed to the extent it is based on a failure to train. (ECF No. 26.)

To succeed on a failure to train or supervise claim, the plaintiff must prove that: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286-87 (6th Cir. 2020) (internal quotations and citation omitted). "There are at least two situations in which inadequate training could be found to be the result of deliberate indifference. First, and most commonly, a plaintiff can demonstrate deliberate indifference by showing that the municipality has failed to act in response to repeated complaints of constitutional violations by its officers." *Id.* Second, "[i]n a narrow set of circumstances, a plaintiff can show that a municipality was deliberately indifferent by failing to equip law enforcement officers with specific tools to handle recurring situations." *Id.* Under this approach, known as "single-incident liability," the risk of the constitutional violation must be so obvious or foreseeable that it amounts to deliberate indifference for the municipality to fail to prepare officers for it. *Id.*

The Court found in its previous order that Plaintiff set forth a failure to train claim based on the single-incident liability approach. (ECF No. 26, PageID.183.) But Defendant Officer Miller testified that he received "[a] lot of training" regarding the use of deadly force. (ECF No. 42-6, PageID.471.) Defendant Officer VanKeuren's training records also show repeated trainings. (ECF No. 42-8.) Thus, the record does not create a genuine question of material fact as to a claim under this theory. *Cf. Ouza*, 969 F.3d at 289 (finding an issue of fact regarding a claim under the single-incident theory when the municipality failed to provide its police officers with *any* relevant training and did not conduct performance evaluations or otherwise monitor officers' conduct) (emphasis added). The Court therefore enters summary judgment in favor of the City of Flint.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is DENIED IN PART and GRANTED IN PART. Accordingly, Plaintiff's Fourth Amendment claim against Defendant Officers survives summary judgment, while Plaintiff's *Monell* claim against Defendant the City of Flint is dismissed with prejudice.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 21, 2023


I hereby certify that a copy of the foregoing document was served upon counsel of record on August 21, 2023, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager